726 A.2d 854

**Dennis Michael IMBESI, Personal Representative of the Estate of Thomas L. Imbesi**

v.

**CARPENTER REALTY CORPORATION, et al.**

No. 619, Sept. Term, 1998.

Court of Special Appeals of Maryland.

April 2, 1999

Marc Seldin Rosen (Colleen A. Cavanaugh and Scanlan, Rosen & Shar, LLC, on the brief), Baltimore, for appellant.

John H. Zink, III (Mary-Dulany James and Venable, Baetjer and Howard, LLP, on the brief), Towson, for appellees.

Argued before SONNER, KENNEY, and JOHN F. McAULIFFE (Retired, specially assigned), JJ.

KENNEY, Judge.

Appellant, Dennis Imbesi, as personal representative of the estate of Thomas Imbesi (the "Estate"), challenges the order of the Circuit Court for Baltimore County, granting judgment in favor of appellees, Carpenter Realty Corporation ("CRC") and 7–Up Bottling Company of Baltimore, Inc.("7–Up/Baltimore"). The Estate raises one question on appeal, which we have rephrased:

> Did the trial court err when it permitted appellees to use an assigned debt instrument as a set-off to the debt owed to the Estate?

Perceiving no error, we shall affirm the judgment of the trial court.

## FACTS AND PROCEEDINGS

The members of the extended Imbesi family own a majority, if not all, of the shares of stock in CRC and six 7–Up Bottling businesses in the Middle Atlantic states, including both 7–Up/Baltimore and 7–Up Bottling Company of Philadelphia, Inc. ("7–Up Philadelphia"). Thomas Imbesi ("Thomas") owned shares in each of the seven corporations.[1] On June 1, 1982, he entered into a single Stock Redemption Agreement (the "Agreement") with the six 7–Up corporations and CRC. Pursuant to the Agreement, the 7–Up entities and CRC agreed to buy back the shares that Thomas controlled for $500,000. The parties concur that each company agreed to pay its *pro rata* share on a monthly basis over a ten-year term, although the Agreement is silent as to that component of the arrangement.

During his lifetime, Thomas borrowed substantial sums of money from several of the 7–Up businesses. For instance,

---

1. At the time of the Agreement, Thomas owned 157 shares of 7–Up/Philadelphia, 95 shares of 7–Up Bottling Company of Bridgeton, Inc., 48 shares of 7–Up Bottling Company of Camden, Inc., 29 shares of 7–Up Bottling Company of Salisbury, Inc., 240 shares of 7–Up/Baltimore, 500 shares of 7–Up Wilmington Company, and 390 shares of CRC.

between October 12, 1973 and June 5, 1978, he executed nine instruments in favor of 7–Up/Baltimore, totaling $145,381.07. At issue in the instant matter is an instrument that he executed, under seal, on October 23, 1979, in favor of 7–Up/Philadelphia for $80,000 (the "Note"). Thomas never paid the loan balance on the Note, which was due on October 23, 1989. 7–Up/Philadelphia, however, did not pursue collection on the debt either from Thomas or, after Thomas's death on March 10, 1992, from the Estate.

After Thomas's death, the Estate contacted the various 7–Up Bottling entities concerning the remaining money owed to Thomas under the Agreement. In a letter dated February 3, 1994, Lawrence Imbesi, an officer of the 7–Up entities and CRC, notified the Estate that Thomas owed "7–Up" $133,861. Lawrence Imbesi offered to forgive this debt if the Estate agreed to forgive the debt 7–Up owed to Thomas under the Agreement. The Estate did not respond to this proposal, and, on March 27, 1994, the Estate filed suit against appellees, claiming that they were responsible for the obligations of all the companies under the Agreement. In its brief, however, the Estate avers that it "withdrew that contention during discovery as it became clear that the parties to the Agreement were independently obligated to Thomas Imbesi for their pro-rata shares of the total purchase price of his stock." The parties stipulated that the pro rata share owed by appellees under the Agreement was $57,447.67.

On April 7, 1994, 7–Up/Philadelphia, which was not made a party to the suit, assigned the Note to appellees, who asserted it as a defense to the Estate's claim and as a basis for a counterclaim. The matter was tried without a jury on March 22, 1995. Thereafter, on April 4, 1995, the circuit court entered judgment for the Estate without reaching the set-off issue, finding that appellees had failed to prove that they were entitled to the amounts alleged in their counterclaim. On the appeal that followed, appellees, the appellants in the first appeal, raised two questions: 1)Did the trial court err in its application of the relative burdens of proof? and 2) Could the Note be used to set off claims made by the Estate? This

Court, in an unreported opinion, held that the trial court erred in its application of the respective burdens of proof and remanded the case for further proceedings.[2] Calling the set-off issue "interesting," the Court refused to address it without prior consideration by the trial court.

On November 18, 1996, the set-off issue was argued before the trial court. On January 14, 1998, the trial court issued a written order, permitting the set-off and ordering judgment in favor of appellees. The Estate's subsequent motion to alter or amend the judgment was denied on March 3, 1998. This timely appeal followed.

## DISCUSSION

In *Ghingher v. Fanseen*, 166 Md. 519, 526, 172 A. 75 (1934), the Court of Appeals stated:

> The basic principle underlying the law of set-off is that a defendant has the right to set off against the plaintiff's demand or claim any claim or demand that he may have against the plaintiff extrinsic to the transaction out of which the plaintiff's claim arises, where the cross demands are mutual, arise out of the same right, are due and payable, and are liquidated.

*See also Cohen v. Karp*, 143 Md. 208, 211, 122 A. 524 (1923) ("The object of allowing [set-off] is to prevent circuity of action and to enable the parties to adjust in one suit claims, which, at common law, could not be settled without two or more actions.").

A party's right to assert a set-off emanates from Md. Rule 2–331, which provides that "a party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." *See Billman v. State of Md. Deposit Ins. Fund Corp.*, 88 Md.App. 79, 593 A.2d 684, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991)(holding that the concept of set-off is embraced

---

2. *Carpenter Realty v. Imbesi,* 110 Md.App. 743 (1996).

within the scope of claims permitted under Rule 2–331). Set-off is available only if the defendant has a right to receive the amount due from the plaintiff and the claim is of such a nature that it forms the basis for recovery in a court of law. *Ghingher,* 166 Md. at 527, 172 A. 75; *Cohen,* 143 Md. at 211, 122 A. 524. Set-off is distinguished from recoupment, which is a defensive claim that arises out of the same contract or transaction as the plaintiff's claim. *Smith v. Johns Eastern Co.,* 269 Md. 267, 305 A.2d 460 (1973); *Billman, supra.*

The statute at issue in this case is Md.Code (1974, 1991 Repl.Vol.), § 8–103 of the Estates and Trust Article ("E.T.")(the "nonclaim statute"), which states, in relevant part:

> (a) *General.*—Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates; or
>
> (1) Nine months after the date of the decedent's death; [3] or
>
> (2) Two months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7–103 or other written notice, notifying the creditor that his claim will be barred unless he presents the claim within 2 months from the mailing or other delivery of the notice.

The parties to this case agree that because it did not file a claim on the Note within nine months of Thomas Imbesi's death, 7–Up/Philadelphia lost the right to assert an affirmative claim on the Note against the Estate. The Estate argues that as soon as the statutory period expired, the Note became "stale" and was without value to its holder, 7–Up/Philadelphia.

---

**3.** Subsequent to the time this case was filed, this section was amended, and the time for filing a claim against an estate was reduced to six months after the decedent's death.

The Estate argues further that by allowing appellees to use the Note as a set-off in this case, the circuit court effectively and erroneously bestowed rights to an assignee greater than those held by the assignor. We do not agree.

██ Estates and Trust § 8–103, a self-executing statute, bars "*claims against* an estate of a decedent." *Lampton v. LaHood,* 94 Md.App. 461, 473, 617 A.2d 1142 (1993)(emphasis added). The operative language of the nonclaim statute does not expressly prevent a defendant from using an unpresented claim as a defensive set-off to a claim *asserted affirmatively* by an estate.[4] See *Hamilton v. Caplan,* 69 Md.App. 566, 518 A.2d 1087 (1987) ("[I]n analyzing the applicability of [E.T. 8–103], we must examine the claim to determine whether it is in fact a claim *against* the estate, for *only* such claims are barred" by the statute.)(emphasis added). Moreover, the purpose of the nonclaim statute is to facilitate the prompt administration of estates. *Greentree v. Fertitta,* 338 Md. 621, 629, 659 A.2d 1325 (1995). The use of a set-off does not delay settlement of an estate any more than any other defense to an Estate's cause of action.

At oral argument, the Estate did not deny that 7–Up/Philadelphia could have used the Note as a set-off had it been sued for a debt owed under the Agreement. Thus, even the Estate apparently concedes that the Note was of some value to 7–Up/Philadelphia, even if only for the limited purpose of setting off claims asserted affirmatively by the Estate. As appellees attempted to use the Note in this capacity, there is simply no merit to the assertion that the circuit court transferred to appellees rights greater than those previously held by 7–Up/Philadelphia.

██ The Estate's fallback position is that, even if an unpresented claim can be used to set off a claim made by an estate,

---

4. It is significant that the Note in this case was executed under seal and thereby remained a basis for a cause of action until October 23, 2001, notwithstanding the provisions of the nonclaim statute.

it can be asserted only by the original creditor.[5] This is not necessarily the case. As appellees note, courts of this State have recognized the validity of using an assigned debt for the purpose of set-off. *Steele v. Sellman,* 79 Md. 1, 28 A. 811 (1894); *Fusting v. Sullivan,* 51 Md. 489 (1879). In *Fusting,* however, the Court of Appeals concluded that whether a party can assert an assigned debt as a set-off depends on the circumstances of the case. In that case, Sullivan instituted an action of *assumpsit* against Fusting. Pending trial, Fusting died and judgment was ultimately obtained against his executors. Sullivan then assigned the judgment to McDougal. "The assignment was made in pursuance of a previous agreement and was evidenced by an order of the Court of Appeals to enter the judgment to the use of McDougal." *Fusting,* 51 Md. at 494. A similar order was filed in the circuit court where the judgment had been recovered.

When McDougal instituted proceedings to collect the judgment, the executors claimed the right to set off the judgment with certain promissory notes made by Sullivan that had been assigned to them by Cross. The assignment of the promissory notes was made in writing and was conditional. The parties agreed that, if the executors "shall not be able to use the two notes ... as a set-off to said judgment, then the said notes shall be returned to said Cross, and he shall refund any money he may have received therefor from said executors."

For several reasons, the Court of Appeals held that the executors were not entitled to use the notes to set off McDougal's claim. First, the Court concluded that, "at the time the assignment [of the judgment] was made, there existed no. equitable right of set-off, or any cross-claim whatever by the defendants in the judgment; the promissory notes were then held by Cross, who was a stranger to the judgment." Thus, the assignment of the notes could not affect the rights of McDougal against the estate, "who purchased in good faith

---

**5.** Because in this case appellees pled a set-off and not a recoupment, there is no requirement that the claim arise out of the same transaction as the underlying suit.

and without notice." Second, the Court noted that the promissory notes were held and could be lawfully acquired by the executors only "in their individual character and in their own right," because, as executors, "it was not competent for them to apply the assets of their testator in purchasing outstanding claims against creditors of the estate." *Id.* at 496–97. Finally, the Court took issue with the conditional nature of the assignment, stating that "the right of set-off does not extend to claims purchased conditionally for the purpose of using them as a set-off, and with the agreement to return them to the seller if not so used...." *Id.* at 497.

In this case, 7–Up/Philadelphia assigned the Note to appellees unconditionally. In addition, the communications between the parties indicate that when it filed the underlying suit, the Estate was on notice of the debt Thomas owed to the 7–Up entities, which included the Note. Under the circumstances, we discern no basis for precluding appellees' use of the Note as a set-off to the Estate's claims. In fact, any holding to the contrary would allow the Estate to exact a windfall. Accordingly, the judgment of the trial court shall be affirmed.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**