744 A.2d 549

**Dennis Michael IMBESI, Personal Representative
of the Estate of Thomas L. Imbesi**

v.

**CARPENTER REALTY CORPORATION et al.**

**No. 46, Sept. Term, 1999.**

Court of Appeals of Maryland.

Jan. 19, 2000.

Marc Seldin Rosen (Colleen A. Cavanaugh of Scanlan, Rosen & Shar, LLC, on brief), Baltimore, for petitioner.

John H. Zink, III (Daniel P. Moylan of Venable, Baetjer and Howard, LLP, on brief), Towson, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

In this case we construe Maryland Code (1974, 1991 Repl. Vol.), § 8–103(a) of the Estates and Trusts Article (ET). At the time applicable to the instant matter, that statute in relevant part read:

"[A]ll claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

"(1) Nine months after the date of the decedent's death; or

"(2) Two months after the personal representative mails or otherwise delivers to the creditor a copy of a notice in the form required by § 7–103 or other written notice, notifying the creditor that his claim will be barred unless he presents the claim within 2 months from the mailing or other delivery of the notice." [1]

Statutes such as ET § 8–103(a) are commonly referred to as "nonclaim statutes." B.R. O'Byrne, Annotation, *Presentation of Claim to Executor or Administrator as Prerequisite of Its Availability as Counterclaim or Setoff,* 36 A.L.R.3d 693, 695 n. 1 (1971) (O'Byrne).

The issue presented is whether debtors of a decedent's estate may set off against the estate's claim against them the indebtedness of the decedent to a third party which the third party assigned to the estate's debtors and on which no timely claim had been made against the estate.

The petitioner is Dennis Michael Imbesi, as Personal Representative of the Estate of Thomas L. Imbesi, who died March 10, 1992 (the Estate). Prior to June 1, 1982, Thomas L. Imbesi (Imbesi) owned stock in varying amounts in six corporations that were primarily engaged in the soft drink bottling

---

1. By Chapter 226 of the Acts of 1992, effective October 1, 1992, the nine month period in § 8–103(a)(1) was reduced to six months.

business conducted by the extended Imbesi family in the Middle Atlantic states. Included among these corporations was 7–UP Bottling Company of Baltimore, Inc. (7–UP Baltimore), 7–UP Bottling Company of Philadelphia, Inc. (7–UP Philadelphia), and Carpenter Realty Corporation (CRC). On June 1, 1982, Imbesi sold all of the stock held by him to the six issuing corporations for a total price of $500,000 payable in 120 monthly installments with interest at 5–1/4% per year. Each of the purchasing corporations was severally liable for the portion of the total purchase price attributable to the shares being redeemed by it.

Three years earlier than the stock redemption transaction, Imbesi had borrowed $80,000 from 7–UP Philadelphia. That loan to Imbesi is evidenced by his promissory note, under seal, dated October 23, 1979, with interest payable semi-annually at the annual rate of six percent and with the $80,000 principal due as a lump sum on October 23, 1989.

Letters of administration of the Estate were granted by the Register of Wills for Baltimore County on March 16, 1992, and a notice to creditors was published immediately thereafter. Under ET § 8–103(a)(1) the time within which 7–UP Philadelphia was to make any claim against the Estate would expire on December 11, 1992. 7–UP Philadelphia never made a claim against the Estate.

At the time of Imbesi's death there were unpaid balances due from 7–UP Baltimore and CRC to Imbesi under the stock redemption agreement of June 1, 1982. In March 1994 the Estate, in the Circuit Court for Baltimore County, sued CRC and 7–UP Baltimore (collectively, the Respondents), for their respective overdue balances, with interest. The day before answering the complaint, the defendants, on April 7, 1994, took by assignment from 7–UP Philadelphia, for a recited consideration of one dollar, the $80,000 note that had been executed by Imbesi on October 23, 1979. In their joint answer and in a joint counterclaim the Respondents asserted that the claim of the Estate based upon the stock redemption agree-

ment was offset by the amount due from the Estate on the $80,000 note then owned by the Respondents.

This action was tried twice in the circuit court. A bench trial in March 1995 resulted in a judgment in favor of the Estate for $57,447.67 on the complaint and a judgment for the Estate as counterclaim defendant. On appeal to the Court of Special Appeals those judgments were reversed, in an unreported opinion, on grounds relating to the burden of proving the authenticity of the 1979 note. Declining expressly to rule on the issue now before us, the Court of Special Appeals remanded for further proceedings.

On remand the circuit court held that the 1979 note could be used by the Respondents as a setoff against the Estate's claims. The Estate appealed to the Court of Special Appeals which affirmed. *Imbesi v. Carpenter Realty Corp.*, 125 Md. App. 676, 726 A.2d 854 (1999). That court held that ET § 8–103(a) barred affirmative use of the note, *i.e.*, obtaining a judgment against the Estate for the net unpaid balance between the parties running in favor of the Respondents. In the view of the Court of Special Appeals, however, that bar did not extend to use of the note as a setoff against the claims of the Estate.

The Court of Special Appeals reasoned that ET § 8–103, "a self-executing statute, bars *'claims against* an estate of a decedent.' The operative language of the nonclaim statute does not expressly prevent a defendant from using an unpresented claim as a defensive set-off to a claim *asserted affirmatively* by an estate." *Imbesi*, 125 Md.App. at 682, 726 A.2d at 857 (citation omitted).[2] Recognizing that the balance remaining unpaid by Imbesi to 7–UP Philadelphia and the balance remaining unpaid by the Respondents to the Estate arose out

---

2. In *Hamilton v. Caplan*, 69 Md.App. 566, 588, 518 A.2d 1087, 1098 (1987), the Court of Special Appeals, quoting 31 Am.Jur.2d, *Executors and Administrators* § 276 (1967), used the following definition:

" 'The word "claims," as used in non-claim statutes, has been construed to mean debts or demands of a pecuniary nature that could have been enforced against the deceased in his lifetime and could have been reduced to a simple money judgment.' "

of separate transactions, the Court of Special Appeals adopted a rule that was not limited to cases in which the claims arose out of the same transaction between the parties, was not limited to claims arising out of any transactions between the same parties, and was applicable where the setoff was based on a debt that had been assigned for the purpose of setoff. *Id.* at 683, 726 A.2d at 857 (citing *Fusting v. Sullivan,* 51 Md. 489 (1879)).[3]

We granted the Estate's petition for certiorari. *Imbesi v. Carpenter Realty Corp.,* 354 Md. 570, 731 A.2d 969 (1999). It presents for review the following question:

"May a party acquire an enforceable note from a third party for the purpose of set-off against an estate when the third party holder of the note failed to file a claim against the estate within the statutory time period?"

For the reasons set forth below we shall reverse the judgment of the Court of Special Appeals.

Analysis of the issue presented requires at the threshold a definition of terms. In this opinion "recoupment" means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of the same transaction on which the adversary's claim is based; "setoff" means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of a transaction other than that on which the adversary's claim is based; and "counterclaim" means the assertion of a right to have an affirmative judgment against the adversary based upon a setoff or a recoupment. See *Billman v. State of Maryland Deposit Ins. Fund Corp.,* 88 Md.App. 79, 92–93, 593 A.2d 684, 690–91, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991). Here, the Respondents acknowledge that they do not have any right to counterclaim based on the note. That is the majority

---

**3.** The Court of Special Appeals considered that the Estate, at oral argument in that court, had "apparently concede[d]" that 7–UP Philadelphia could have used the note as a setoff against a claim by the estate. *Imbesi,* 125 Md.App. at 682, 726 A.2d at 857. A court, however, is not bound by an erroneous concession of law.

rule. *See* O'Byrne, 36 A.L.R.3d at 697 ("[T]he courts generally have held that the unpresented claim can be used only in a defensive character, and not as the basis of an affirmative or originating action by the claimant against the estate, and those cases generally further establish that the plea is limited to the reduction or extinguishment of the plaintiff's claim, and is not available to permit the recovery by the defendant of any excess over the amount of that claim.").

Respondent's contention, with which the Court of Special Appeals agreed, is that they were entitled to a setoff. In other words, the Court of Special Appeals held that ET § 8–103(a) operates only to bar a counterclaim against a decedent's estate. Because the Respondents assert a setoff, our holding will be limited to whether ET § 8–103(a) bars setoff as well as counterclaim.

Whether "claims," as used in ET § 8–103(a), includes or excludes counterclaims, setoffs, and recoupments is not directly addressed in the statutes relating to decedent's estates, and it is not directly addressed in any Maryland appellate decisions. Consequently, we must apply the familiar rules of statutory construction.

The text of ET § 8–103(a) makes clear that the General Assembly intended that "claims" be given a broad meaning. The statute applies to "all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis." Claims falling within the quoted language that are untimely "presented" are "forever barred."

The manner in which claims are presented is set forth in ET § 8–104. Claims, excluding those for which the decedent was covered by liability insurance, must be presented either by delivering a verified written statement of the claim to the personal representative or to the Register of Wills, or by commencing a suit. ET § 8–104(b), (c), (d). Here, 7–UP Philadelphia had a claim against the Estate which could have been, but was not, timely presented in any of the three manners set forth in ET § 8–104. From this the Estate

concludes that the claim on the note was barred in the hands of 7–UP Philadelphia and, accordingly, is barred in the hands of the Respondents. Respondents' counter argument is that use of the note by 7–UP Philadelphia as a setoff against a claim by the Estate would not be barred, inasmuch as it is a purely defensive use, and that the Respondents may make the same defensive use of the note as 7–UP Philadelphia could have made. Thus, ET § 8–104 will produce different results depending upon the construction of § 8–103(a) that is assumed.[4]

The purpose of the nonclaim statute is to expedite the administration of decedents' estates. *Greentree v. Fertitta,* 338 Md. 621, 629, 659 A.2d 1325, 1329 (1995). The nonclaim statute not only benefits the legatees, but also protects the personal representative from " 'liability for claims not filed within the time and in the manner prescribed.' " *Burket v. Aldridge,* 241 Md. 423, 429, 216 A.2d 910, 912 (1966) (quoting *Bertonazzi v. Hillman,* 241 Md. 361, 367, 216 A.2d 723, 726 (1966)). In the instant matter the Court of Special Appeals concluded that permitting setoff is at least consistent with this policy, saying, "The use of a set-off does not delay settlement of an estate any more than any other defense to an [e]state's cause of action." *Imbesi,* 125 Md.App. at 682, 726 A.2d at 857. If we limit our consideration to setoff, recoupment, and a complete bar against defensive use of the untimely asserted claim held by an estate's debtor, setoff is most likely to complicate and prolong resolution of an estate's claim against its debtor. Resolution of a setoff defense will require consideration of the facts and circumstances of a separate transaction and consideration of any defenses that an estate might have against a finding of indebtedness by the estate arising out of that separate transaction. Neither recoupment nor a complete bar to defensive use carry that potential for prolong-

---

4. ET § 8–113 provides that "[i]n allowing a claim the personal representative may deduct a counterclaim which the estate has against the claimant." Inasmuch as a nonclaim statute does not apply to claims by an estate, ET § 8–113 likewise casts little light on the issue before us.

ing resolution of an estate's claim and, thereby, prolonging completion of administration.

The legislative history of Maryland's nonclaim statutes evidences that the policy has been to increase the scope of those protected by the nonclaim statute and to reduce the time within which an estate's creditor can avoid the operation of the nonclaim statute. From 1798 until January 1, 1970, the running of the nonclaim statute was triggered by an estate's rejection of a claim that had been presented. *See* Acts of 1798, ch. 101, subch. 8, § 18 and Md.Code (1957, 1964 Repl. Vol.), Art. 93, § 119. From 1798 to 1959 the period from rejection of a claim to the imposition of the bar of the nonclaim statute was nine months. *See* Acts of 1798, ch. 101, subch. 8, § 18. The nine month period was reduced to six months by Chapter 12 of the Acts of 1959. *See* Md.Code (1957, 1964 Repl.Vol.), Art. 93, § 119.

The time at which the bar of the nonclaim statute operated was accelerated by Chapter 3 of the Acts of 1969, effective January 1, 1970, as a result of the reports of the Governor's Commission to Review and Revise the Testamentary Law of Maryland (the Henderson Commission). The new nonclaim statute was codified as Md.Code (1957, 1969 Repl.Vol.), Art. 93, § 8–103(a). Under the new legislation, the statute's running period was reduced to six months beginning on the date of the first published notice to creditors.[5] Article 93, § 8–103, effective January 1, 1970, also enlarged the scope of protection of the nonclaim statute by changing the rule of *Zollickoffer v. Seth,* 44 Md. 359 (1876), under which a creditor who had failed to comply with the nonclaim statute, thus forever barring the claim against the estate, nevertheless could claim against the

---

5. The Henderson Commission had recommended that the period of the running of the nonclaim statute be reduced to four months, measured from the date of the first published notice to creditors. Henderson Commission, *Second Report,* at 121–22 (1968). As introduced in the 1969 session of the General Assembly, the bill that became Chapter 3 of the Acts of 1969 would have reduced the period to four months from the first notice to creditors. The bill was amended in the course of passage to six months.

heirs or legatees to whom distribution had been made. ET § 8–103 provides that the claim that is not timely filed is "forever barred against the estate, the personal representative, and the heirs and legatees." See *Campbell v. Welsh*, 54 Md.App. 614, 625–30, 460 A.2d 76, 83–85 (reviewing the history of the nonclaim statute), *cert. denied*, 297 Md. 108 (1983), and Comment of Henderson Commission following Md.Code (1957, 1969 Repl.Vol.), Art. 93, § 8–103. That comment in part observes that "the present six month date is reasonable in that it gives creditors sufficient time to file their claims and at the same time tends to encourage the prompt administration and settlement of estates."

By emergency legislation effective May 19, 1989, the nonclaim statute was made self-executing. The decedent's death became the triggering event, the period before the bar was imposed was made nine months, and the alternative procedure for shortening that period, now found in ET § 8–103(a)(2), was enacted. *See* Chapter 496 of the Acts of 1989. The purpose of the amendment was to avoid due process problems under the analysis in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). *See Ohio Cas. Ins. Co. v. Hallowell*, 94 Md.App. 444, 452, 617 A.2d 1134, 1138 (1993), and A.J. Gibber, *Estate Administration* § 6.21 (4th ed. 1999 Supp.). The nonclaim statute as amended in 1989 governs in the case before us. By Chapter 226 of the Acts of 1992, the nonclaim statute was again accelerated to shorten to six months the period measured from death of the decedent. *See* Md.Code (1974, 1991 Repl.Vol., 1999 Cum. Supp.), ET § 8–103(a)(1).

In 1920 a closely related statute was enacted by Chapter 674 of the Acts of that year (the 1920 Act). Initially codified as Md.Code (1924), Art. 93, § 110, it read:

"If a claim shall be asserted against or exhibited to an administrator or executor in any form, whether sworn to or passed by the Orphans' Court or not, and he shall refuse payment thereof in writing, such claim shall be forever barred unless the creditor shall bring suit upon the same within nine months after such rejection."

By Chapter 554 of the Acts of 1957 the time period in the 1920 Act was reduced to six months from rejection. Last codified as Md.Code (1957, 1964 Repl.Vol.), Art. 93, § 120, the 1920 Act was repealed in the revision of the testamentary laws, effective January 1, 1970, and its bar is now included in ET § 8–103. A number of this Court's cases discussing untimeliness of a claim against an estate have involved both the nonclaim statute and the 1920 Act.

In *Nowell v. Larrimore,* 205 Md. 613, 109 A.2d 747 (1954), we said:

> "It has been repeatedly held by this Court that [the nonclaim statute and the 1920 Act] create a statutory bar as distinguished from a mere period of limitations which may be waived. It extinguishes the right to sue, not merely the remedy. The purpose of these sections is to prevent a creditor with a controverted claim from unduly prolonging the settlement of the decedent's estate."

*Id.* at 624, 109 A.2d at 752 (citations omitted). *See also Donnally v. Montgomery County Welfare Bd.,* 200 Md. 534, 540–41, 92 A.2d 354, 357 (1952) (same). In *Frank v. Wareheim,* 177 Md. 43, 50, 7 A.2d 186, 189 (1939), we stated that the 1920 Act "is not the usual statute of limitations whose operation as a bar to the remedy may be variously obviated or abandoned, but a statutory bar which prevents the collection of the claim, unless the creditor shall bring suit on the claim within nine months of its rejection."

An enactment analogous to the nonclaim statute and to the 1920 Act was involved in *Chandlee v. Shockley,* 219 Md. 493, 150 A.2d 438 (1959). Maryland Code (1957), Art. 93, § 112 provided in essence that an action for personal injuries tortiously caused by the decedent could be maintained against the personal representative, but such an action "must be commenced within six calendar months after the date of the qualification of the [personal representative]." The *Chandlee* Court characterized § 112, the nonclaim statute, the 1920 Act, and the wrongful death statute as establishing conditions precedent, 219 Md. at 497, 150 A.2d at 441, and as the type of

statutes "in which the time proviso is part of the right and not merely a limitation of the remedy." *Id.* at 498, 150 A.2d at 441.

Given the "forever barred" language of ET § 8–103(a), coupled with the recognition in our cases, reviewed above, that it creates a substantive time limit that is part of the right conferred, one could be led to conclude that the owner of a claim against a decedent's estate, who has failed timely to assert it under ET § 8–103(a) could not use the obligation for any purpose. But our cases have not gone so far as to hold that such a time bar extinguishes the claim under all circumstances. Thus, in *Chandlee,* this Court held that the personal representative was estopped to assert the bar of the statute because of representations made on behalf of the estate that the injured plaintiff's claim would be paid. *Id.* at 502, 150 A.2d at 443. Similarly, in *Frank,* 177 Md. 43, 7 A.2d 186, a claim was presented to the estate valuing at $3,150 personal services rendered to the decedent. That claim was rejected, but the parties continued to negotiate and ultimately compromised the claim at $1,000. Certain legatees objected to the payment of the settlement amount because the claimant had not sued within nine months from the rejection of the claim as submitted. This Court held that acknowledgment by the personal representatives of the validity of the claim, as reduced, had the effect of rescinding the prior notice of rejection. *Id.* at 51, 7 A.2d at 190. *See also Geisz v. Greater Baltimore Med. Ctr.,* 313 Md. 301, 325, 545 A.2d 658, 669 (1988) ("[E]stoppel based on fraud or fraudulent concealment of a cause of action operates to toll the substantive limitations period in the wrongful death statute."); *Lampton v. LaHood,* 94 Md.App. 461, 475–80, 617 A.2d 1142, 1151 (1993) (creditor's reliance on estate's representation that claim had been perfected was justified and estoppel arose).

In the instant matter the Respondents have never suggested that collection of the Estate's debt, evidenced by the 1979 note, avoids the bar of ET § 8–103(a) because of estoppel, waiver, or fraud. The Respondents do cite *Frank* as Maryland precedent "permitting a personal representative to re-

duce the distribution of an estate's beneficiary by the amount of the beneficiary's promissory note held by the estate— despite expiration of the applicable statute of limitations for enforcing the note." Brief of Appellees at 10. The aspect of *Frank* to which the Respondents refer, however, addressed an ordinary statute of limitations. Indeed, this Court's holding on that aspect of *Frank* states that "[t]he rule that the statute of limitations is ineffective against the retainer of the debt rests upon the sound principle that the statute only bars the remedy and, so, the debt is not extinguished." *Id.* at 59, 7 A.2d at 193. Here, the nonclaim statute is not an ordinary statute of limitations.

Viewing the issue before us from a pleading standpoint strongly suggests that a setoff should be considered as a claim within the meaning of the nonclaim statute. Chief Judge Brune, writing for the Court in *District Agency Co. v. Suburban Delivery Service, Inc.*, 224 Md. 364, 167 A.2d 874 (1961), explained the historic difference by quoting 1 J.P. Poe, *Pleading and Practice in the Courts of Common Law* § 615, at 643 (5th Tiffany ed. 1925) (Poe), as follows:

" 'When the abatement claimed by the defendant on the amount of the plaintiff's demand grows out of and forms part of the contract in which the claim of the plaintiff originated, the plea of set-off is not necessary, but the defense is open to the defendant under the general issue [plea]. * * * But wherever the defense is a counterclaim, arising out of an independent transaction, and constituting, of itself, a separate cause of action, for which the defendant might maintain a cross action at law against the plaintiff, it must be pleaded as a set-off.' "

*District Agency Co.*, 224 Md. at 369–70, 167 A.2d at 876–77.

Under a special plea of setoff, an affirmative judgment could be entered in favor of the party pleading setoff. Authorization for an affirmative judgment was statutorily based beginning with the Act of 1785, Chapter 46, § 7 and continuing to the time when the Maryland Rules of Procedure, effective January 1, 1957, were operative. See 9 Annotated Code of Mary-

land (1957) at 216.[6] Under the 1957 Rules "Rule 342 c1(c) require[d] a counterclaim to be specially pleaded if it seeks relief exceeding in amount the relief sought by the plaintiff *or arises out of an independent transaction.*" *District Agency Co.*, 224 Md. at 370, 167 A.2d at 877. At common law, *see* Poe § 615, and under the 1957 Rules, recoupment could be shown under the general issue plea, but no affirmative judgment could be obtained. *See E.J. Smith Constr. Co. v. Burton*, 262 Md. 62, 67–69, 277 A.2d 84, 86–87 (1971) (counterclaim by owner for alleged damage due to faulty construction not required in order to recoup against contractor's claim for services because general issue plea was sufficient). Thus, the pleading background against which the General Assembly enacted ET § 8–103(a) treated setoff as permitting an affirmative judgment.[7]

Courts of our sister states have reached a variety of results on whether a claim barred under a nonclaim statute may be

---

**6.** The statutes tracing to 1785 were repealed by Chapter 399 of the Acts of 1957, effective June 1, 1957. In the Code of 1951 the provisions of the Act of 1785, Chapter 46, § 7 were Article 75, §§ 16 and 17, which in relevant part read:

"**16.** In any suit *ex contractu* or upon any judgment, if the defendant shall have any demand or claim arising *ex contractu* or upon judgment against the plaintiff, the defendant may plead such claim specially, whether such claim of the defendant be for liquidated or unliquidated damages, and whether it be of such nature as may be availed of by way of recoupment without such special plea or not.

"**17.** In every case where a special plea is filed as authorized by the preceding Section, judgment for the excess of the one claim over the other, as each is proved, with costs of suit, shall be given in favor of the plaintiff or the defendant, according as such excess is found in favor of the one or other of the parties, if such excess be sufficient to support a judgment in the court where the cause is tried according to its established jurisdiction...."

**7.** The revision of the Maryland Rules of Procedure in 1984 does not substantially alter the treatment of setoff for pleading purposes. Setoff is not listed in the twenty-one item laundry list of affirmative defenses in Maryland Rule 2–323(g) that are to be raised in the answer, and, necessarily, must be asserted by counterclaim under Rule 2–331(a).

It is unnecessary in the instant matter to determine whether recoupment today may be shown under the general denial permitted by Rule 2–323(d).

used to set off a claim asserted by a decedent's estate. *See* O'Byrne, 36 A.L.R.3d 693. The rationale that we find to be most helpful is found in those cases which permit the claim barred by the nonclaim statute to be used for recoupment. For example, in *Katskee v. Nevada Bob's Golf of Nebraska, Inc.*, 238 Neb. 654, 472 N.W.2d 372 (1991), the estate sought back rent under a lease conferring a right of first refusal on the tenant which the tenant claimed had been breached by the decedent landlord but on which no claim timely had been filed. Referring to the Nebraska nonclaim statute as a statute of limitations, the court cited, *inter alia*, C. Wright, *The Law of Federal Courts* 534–35 (4th ed.1983), where the author states:

" 'The usual doctrine, with respectable common law origins, is that an unrelated counterclaim is barred by the statute of limitations. A counterclaim that arises out of the transaction or occurrence on which the action is founded may be asserted for purposes of recoupment to prevent or reduce a judgment for plaintiff but affirmative relief will not be given on such a counterclaim.' "

*Katskee*, 472 N.W.2d at 378. *See also In re Estate of Massie*, 218 Neb. 103, 353 N.W.2d 735, 740–41 (1984) (in defense of estate's claim for the gross proceeds from the sale of cattle, estate's debtor allowed recoupment for cost of caring for and feeding the cattle).

*Minex Resources, Inc. v. Morland*, 467 N.W.2d 691 (N.D. 1991), involved multiple claims concerning oil and gas rights. Among them was the estate's impleader of an indemnitor against claims of unpaid contributions to operating expenses. The alleged indemnitor was permitted to seek recoupment of amounts that the indemnitor allegedly overpaid to cover operating expenses for the benefit of the decedent during her lifetime. The court said: "We agree with the weight of authority that a claim in the nature of a recoupment defense survives as long as the plaintiff's cause of action exists, even if affirmative legal action upon the subject of recoupment is barred by a statute of limitations." *Id.* at 699. As the term was used by the *Minex Resources* court, "[r]ecoupment is an equitable doctrine with its own unique characteristics: it must

arise out of the same transaction that is the subject matter of the plaintiff's action and it can only be used to reduce or avoid the plaintiff's recovery." *Id.*

Using the terminology, "setoff," other courts have allowed recoupment based on claims that had not been filed under a nonclaim statute. *See Dash v. Rubey,* 144 Colo. 481, 357 P.2d 81, 83 (1960) (surviving partner, sued by deceased partner's estate for contribution to partnership losses, allowed recoupment based on deceased partner's overdraws); *In re Estate of MacDonald,* 4 Ariz.App. 94, 417 P.2d 728, 732–33 (1966) (tenant, sued for unpaid rent by deceased landlord's estate, allowed recoupment based upon alleged subsequent oral modification of lease by landlord to reimburse tenant for tenant's expenditures for repairs to premises); *Bakke v. Buck,* 21 Wash.App. 762, 587 P.2d 575, 578 (1978) (borrower, sued by deceased lender's estate for unpaid balance on usurious loan, allowed recoupment based on penalties provided by usury statute). *But see Harper v. Coad,* 191 N.W.2d 682, 689 (Iowa 1971) (legatee, sued by estate for amount paid by decedent as surety on obligations due by legatee to third party, allowed setoff based on the value of services allegedly rendered to decedent during lifetime); *Stiles v. Smith,* 55 Mo. 363, 366–67 (1874) (setoff, based on debts separate from estate's claim for work done and materials provided by decedent, allowed *by statute* ).

At oral argument in this Court, the Respondents emphasized *Berrigan v. Pearsall,* 46 Conn. 274 (1878), which holds that the nonclaim statute did not bar defensive use of a $300 loan balance owed by the decedent at his death against the claim of the estate's assignee of $118.09 owed by the lender to the decedent on "an account on book." *Id.* at 275. The court described the nonclaim statute as "simply a statute of limitations" which bars the right to recover, but not the debt which "is not paid by lapse of time." *Id.* at 276. The Supreme Court of Connecticut, however, in *State v. Goldfarb,* 160 Conn. 320, 278 A.2d 818 (1971), described the then nonclaim statute, in dicta, saying:

"It is settled law that [the nonclaim statute] is not a statute of limitation but, instead, imposes a condition precedent to a legal recovery against a solvent estate. In an action on a claim, the due presentation of the claim is a necessary allegation in the complaint, and, lacking such allegation, the complaint is demurrable."

278 A.2d at 821 (citation omitted).[8]

Faced with the foregoing conflict, the Appellate Court of Connecticut in *Genovese v. J.N. Clapp Co.*, 4 Conn.App. 443, 495 A.2d 1079 (1985), considered the nonclaim statute to be a statute of limitations. Under that analysis "recoupment" was available defensively. The court defined "recoupment" as we have defined it, *supra*, namely, a defense that "arises out of the transaction constituting the plaintiff's cause of action" and that is used purely defensively. 495 A.2d at 1081. Inasmuch as Connecticut law on the issue before us is somewhat unclear, and inasmuch as the Connecticut decision most favorable to Respondents, *i.e.*, *Berrigan*, considers that state's former nonclaim statute to be a statute of limitations, unlike the Maryland rule, we are not persuaded to follow *Berrigan*.

█ Based on all of the foregoing considerations, we construe ET § 8–103(a) to bar a claim that has not been timely presented and that arises out of a transaction separate from that on which the estate claims. In sum, our construction of the nonclaim statute is dictated by the following factors: (1) the language of the statute; (2) its purpose of expediting the settlement of estates; (3) its history of enactments progressively restrictive of the time within which to present claims; (4) the longstanding construction by this Court of the nonclaim statute as a condition precedent to asserting a claim; (5) Maryland's longstanding treatment of setoff, from a pleading and practice standpoint, as a defense on which an affirmative judgment could be entered in favor of the defendant; and (6)

---

**8.** The statute involved in *Berrigan* provided that the estate's creditor " 'shall be debarred of his claim against said estate.' " 46 Conn. at 276. The statute involved in *Goldfarb* read that the estate's creditor " 'shall be barred of his demand against such estate.' " 278 A.2d at 820 n. 1.

▬▬▬▬▬▬▬▬▬▬

the fact that a number of decisions in other states that permit defensive use of "setoff" actually involve recoupment.

■ It is sufficient for present purposes to hold that the nonclaim statute does not permit a setoff based on a claim barred by ET § 8–103(a), even if the estate's debtor voluntarily seeks to limit the setoff to the amount of the estate's claim. Whether the result is the same if the estate's debtor raises recoupment is an issue that need not presently be decided.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT REVERSING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMANDING THIS CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.*

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS, CARPENTER REALTY CORPORATION AND 7–UP BOTTLING COMPANY OF BALTIMORE, INC.*