## TATES *v.* TONEY

[No. 115, September Term, 1962.]

*Decided February 18, 1963.*

*Motion for rehearing and clarification of opinion filed March 18, 1963, denied April 11, 1963.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Amos I. Meyers,* with whom was *Paul L. Wilkins* on the brief, for appellant.

*Morton P. Fisher, Jr.,* and *Jesse Slingluff,* with whom were *Piper & Marbury* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

Newton Toney (appellee) and John W. Perry, Jr., the operators of two motor vehicles involved in a collision, were sued for injuries sustained by the appellant, Miriam Tates, who was a passenger in the Toney automobile. A jury rendered a

verdict of $5,000 against the two defendants. Toney filed a motion for judgment *n.o.v.* or in the alternative for a new trial, the latter of which was granted on the ground that no instruction had been given as to the statutory requirement for the operator of the Perry vehicle to signal his intention to make a left turn. Perry filed no motion or appeal, and final judgment was entered against him. Mrs. Tates now appeals from a judgment entered on a directed verdict in favor of Toney in the second trial.

Shortly after 7 A.M. on December 24, 1957, the appellee, Toney, was driving his automobile eastward on Washington Boulevard in Baltimore City on his way to the Coast Guard Depot at Curtis Bay. Mrs. Tates, the appellant, a regular rider with the appellee, was in the car. As they proceeded along an upgrade toward the intersection of Washington Boulevard and Harman Avenue, an automobile being driven in the opposite direction by Perry, turned left across the lane in which Toney was driving in order to go south on Harman Avenue. Perry testified that he gave no signal of any kind of his intention to make a left turn. Although there is some conflict in the testimony as to how far the Perry vehicle had turned into the intersection before the appellee applied his brakes, the point of impact was determined to be 6 feet north and 8 feet west of the southeast corner of Washington Boulevard and Harman Avenue. The front of appellee's car struck the right front of the Perry vehicle. Perry testified at one point that he did not see Toney's car until he heard the brakes being applied and that the collision occurred at "almost the same time", and at another point that when he heard the brakes screech and looked, Toney's car was 60 to 70 feet from Toney's side of the intersection, although it was difficult to estimate the distance. The skid marks indicated that appellee's car moved 41 feet from the place where the brakes were applied to the point of impact, and then shoved the Perry car about 10 feet sideways.

At the scene of the accident Washington Boulevard is 36 feet wide and is a two-lane through street which is not divided by a median strip. Perry testified he was aware that Washington Boulevard was a boulevard. Harman Avenue, into which Perry was turning, is a one-way southbound street on the

south side of Washington Boulevard (it is a two-way street on the north side) and is about 32 feet wide. There is a stop sign at the northwest corner of the intersection, facing north for southbound traffic on Harman Avenue.

The exact degree of visibility at the time of the accident is somewhat in dispute, although it was established that it was daylight and that the visibility was from fair to good (about 400 feet, according to Perry). The speed limit on the boulevard was 30 miles per hour. Appellee stated that his speed was 35 miles per hour, while a fire department expert who happened to see the accident occur estimated appellee's speed as in excess of 50 miles per hour. Appellant testified that she had requested appellee to slow down on several occasions, which he denied. Also in evidence were admissions by the appellee that he had had only four hours' sleep the previous night, and that he had had a couple of drinks of whiskey at one o'clock in the morning. The investigating police officer testified that appellee had the odor of alcohol on his breath, although not enough to charge him with drunken driving.

The crucial issue upon which the determination of this case turns is whether the trial court was correct in directing a verdict for the appellee based on the theory that the "boulevard law"—Code (1957), Art. 66½, Secs. 233 and 242—applied, and that appellee was a favored driver and Perry an unfavored one. It is appellant's contention that the boulevard law has no application to the facts of this case, and that therefore the evidence of appellee's negligence was sufficient to warrant the submission of the case to the jury. She contends that the express terms of the statute make it clear that it was not intended to regulate vehicles moving on a boulevard or exiting therefrom, but rather that it was intended to apply only in those situations in which vehicles are in the process of making entrance onto a favored highway. This is not a boulevard case, she says, because Perry was attempting to leave a through highway, and not to enter one. On the other hand, appellee contends that this case involves intrusion into a boulevard lane and is a proper one for application of the boulevard law, and that, even if the boulevard law does not apply, no negligent act of the appellee was a proximate cause of the appellant's injuries.

This Court has already answered the basic issue involved here—whether the boulevard law applies to the facts before us. In *Safeway Trails, Inc. v. Smith*, 222 Md. 206, 159 A. 2d 823 (1960), we said (at p. 212 of 222 Md.) :

"The boulevard law was not applicable here for several reasons. The tractor-trailer was not entering a through highway, it was leaving one. * * * By its express terms, the boulevard law controls entrance onto the favored highway; exit from it is not mentioned. Code (1957), Art. 66½, Sec. 2 (60) and Secs. 233 and 242."

Again, in *Palmer v. Scheid*, 223 Md. 613, 166 A. 2d 244 (1960), we found the *Safeway Trails* case controlling and reaffirmed the principle there laid down. In each case a judgment against the owner or operator of a vehicle on a through highway which struck another vehicle seeking to turn from a lane of the same highway was affirmed. While the facts in those two cases differ from the facts in the case before us, the principle there enunciated is fundamental and is applicable to the situation involved here.

The doctrine of contributory negligence is not applicable in this case because, under the facts, any negligence of the appellee, Toney, is not imputable to his passenger, Mrs. Tates, the appellant.

Perry was required by Code (1957), Art. 66½, Sec. 228 (a), not to turn his vehicle from a direct course until such movement could be made with reasonable safety, and then to give an appropriate signal in the event any other vehicle might be affected by the maneuver. Sec. 232 provides that "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard."

There is no question here as to Perry having violated the provisions of the cited sections—indeed, that appears to be conceded on all sides. The issue is whether his violation of these statutory provisions was the sole proximate cause of the ensuing accident, or whether there was some negligence at-

tributable to the appellee which also was a proximate cause of the accident and of the appellant's injuries.

The evidence was conflicting and contradictory as to many of the material facts, and there were inferences which must be drawn from certain of the facts, such as the speed at which appellee was traveling immediately preceding the accident (he admitted having exceeded the speed limit of 30 miles per hour, but far short of 50 miles per hour, the estimate of the expert) ; whether appellee maintained proper control of his car, and a proper lookout; how far the Perry vehicle had turned before it was first seen by appellee; whether appellee could have cut to the left, in the rear of Perry, and thus have avoided a collision; whether appellee could reasonably have been expected to anticipate the turn even in the absence of a signal; the effect of appellee's lack of sleep and alcohol consumption the previous night; and the testimony that appellee had been admonished by appellant on several occasions to slow down. Obviously, these are issues having to do with the question whether any negligence of the appellee was a proximate cause of the accident, which only the jury could answer.

As was stated in *Meldrum v. Kellam Distr. Co.,* 211 Md. 504, 511, 128 A. 2d 400 (1957) :

> "* * * Where the nature and attributes of an act relied upon to show negligence contributing to an injury sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as a matter of law. * * *"

See also *Creighton v. Ruark,* 230 Md. 145, 186 A. 2d 208 (1962) ; *Otis Elevator Co. v. LePore,* 229 Md. 52, 181 A. 2d 659 (1962) ; *Nardone v. Underwood,* 219 Md. 326, 149 A. 2d 13 (1959).

For the reasons indicated, it was error to grant appellee's motion for a directed verdict.

*Judgment reversed and case remanded for a new trial; costs to be paid by appellee.*