RANDOLPH ORLANDO TRADER AND NELSON
LEWIS MAJOR *v.* LOLA MARIE WHITE
AND EDDIE JONES

[No. 223, September Term, 1970.]

*Decided January 8, 1971.*

The cause was argued before MURPHY, C.J., and ORTH, MOYLAN, and POWERS, JJ.

*D. William Simpson* for appellants.

*Walter C. Anderson* and *William A. Franch* for appellees.

POWERS, J., delivered the opinion of the Court.

Mrs. Lola White, who lives on West Road about two miles north of Salisbury, was injured in a motor vehicle collision which occurred about 10:00 P.M. on June 1, 1968 on West Road, at the driveway entrance to her home. She was then 62 years old. A short time earlier she had arranged to go to the store with Eddie Jones, a boarder in her home. Jones was driving a 1948 pick-up truck, which he owned. Upon their return from the store, Jones, then headed north on West Road, had slowed or stopped to make a left turn into the driveway. When his truck was at an angle and partly in the southbound lane and

partly in the northbound lane, it was struck by a southbound automobile owned by the defendant Nelson Lewis Major and operated on an errand for Major by Randolph Orlando Trader. West Road at that point was a two lane highway, approximately 18 feet wide, and was straight for about 500 feet to the north and about one mile to the south. The speed limit was 50 miles per hour. There was no illumination.

Mrs. White sued Trader, Major and Jones in the Circuit Court for Wicomico County to recover damages for her injuries. Trader was also hurt, and filed a crossclaim against Jones for his injury. The case was tried before Judge Travers and a jury on January 13 and 14, 1970. The jury found in favor of Mrs. White against all defendants and in favor of Jones on Trader's crossclaim. After the disposition of motions, judgments were entered on the verdicts on February 2nd and Trader and Major thereafter filed this timely appeal.

Jones did not appeal.

It is not questioned that Trader was driving on Major's business and the two were in effect treated as one defendant. Major was not in his automobile and did not testify at the trial.

At the close of all the evidence motions were made on behalf of Trader and Major for a directed verdict and the motions were denied. In this court appellants make five contentions. They are:

1. That the evidence was not legally sufficient to support a jury verdict against them.
2. That after the investigating officer had testified that he noted "excessive speed" by Trader on his report, they should have been permitted to ask the officer whether he made a speeding charge against Trader (there had been a pretrial instruction that no reference should be made as to whether traffic charges were or were not brought against either driver).
3. That the trial judge erred in refusing to in-

struct the jury that there was no legally sufficient evidence of unlawful speed by Trader.

4. That the trial judge erred in refusing to instruct the jury that there was no legally sufficient evidence that Trader's headlights were not on.

5. That the trial judge erred in refusing to instruct the jury that if Jones did not have his headlights on then there was no legally sufficient evidence of any negligence by Trader.

Mrs. White here contends that there was legally sufficient evidence to submit to the jury the questions of whether Trader was travelling at a reasonable rate of speed, or keeping a proper lookout, or had his vehicle adequately lighted, and also contends that testimony as to whether criminal charges were placed or not was properly excluded.

What the case really boils down to is whether there was evidence of sufficient probative force from which the jury could properly find that Trader was driving too fast, or without headlights, or both, and that his fault in either or both respects was a concurring proximate cause of the accident.

Other than physicians, witnesses who testified were the plaintiff, the two drivers, the trooper, Roxie Waters and Fabian White, grandchildren of the plaintiff who lived with her, and Daisey Mae Stiles, a friend who lived there at the time.

### Trader's Speed

The speed limit was 50 miles an hour. Trader testified, on direct examination, that his speed was "about 45, 50". There was no cross-examination on this point. Jones, Mrs. White, Roxie Waters, Fabian White and Daisey Mae Stiles all testified that they did not see the Trader vehicle before the collision. None of these witnesses gave any evidence at all on the question of Trader's speed.

Trooper Haddaway testified that he investigated the ac-

cident, arriving some time after it happened. During cross-examination by counsel for Jones, the record shows:

"Q. I believe when you filed your report in this matter you noted excessive speed on the part of Trader? A. Yes, sir, that is correct.

Q. What facts did you find that caused you to draw this conclusion? A. Mainly the excessive damage to the vehicle."

In recross-examination of the trooper by counsel for Trader, the record shows:

"Q. You based your conclusion of excessive speed strictly from the damage to the two vehicles, is that correct? A. Yes, sir.

Q. Two vehicles running together can cause considerable damage, can they not? A. Yes, sir, they can."

This is the sum of all the evidence relating to speed by Trader. The trooper's statement of what he put on his report, and his reason, was not factual evidence, but a conclusion by him, shown to have been based solely upon the damage to the vehicles. It was not sufficient to raise the issue of speed for consideration by the jury.

Whatever Trader's speed, there is no evidence nor rational inference, which could connect it as a proximate cause of the collision. Appellee refers us to *Tates v. Toney,* 231 Md. 9, 188 A. 2d 283 (1963) and *Baker v. Baker,* 239 Md. 351, 211 A. 2d 320 (1965). In *Tates* the evidence was that the driver admitted 35, in a 30 mile zone, a disinterested bystander estimated his speed at 50 miles per hour, and his passenger had several times requested him to slow down. In *Baker,* the court recited a number of material facts upon which the evidence was conflicting and contradictory.

In *Belle Isle Cab Co. v. Pruitt,* 187 Md. 174, 49 A. 2d 537 (1946), the Court of Appeals reviewed the authorities, and stated, at page 182, that "even if we should assume unreasonable or excessive speed on the part of the

taxi driver under the circumstances, we are unable to find that such speed contributed to, or was the proximate cause of the accident." That Court went on to say, at page 183:

> "These cases illustrate the principle that while questions of proximate cause, like questions of negligence or contributory negligence, are ordinarily decided as questions of fact, they may be so clear as to be determinable as questions of law."

See also *Koester Bakery Co. v. Poller*, 187 Md. 324, 50 A. 2d 234 (1946), in which the Court of Appeals disposed of an argument of excessive speed by saying, at page 332:

> "But even if we assume, in this case, that top speed was unreasonable, and afforded some evidence of negligence, we think there is no showing that the speed contributed to the happening of the accident.
>
> The cause of the accident was clearly the unexpected, and unforeseeable, entry of the truck upon the tracks at a point where the collision could not have been avoided even if the street car had been travelling at a speed of 25 miles per hour. Under such circumstances it cannot be inferred that the higher speed assumed was a contributing cause. We had occasion to examine the authorities on this point in the recent case of *Belle Isle Cab Co. v. Pruitt*, 187 Md. 174, 49 A. 2d 537. In that case, and in the cases there cited, it was held that excessive speed is not a concurrent cause, where the primary cause is the unforeseeable, negligent act of a third party, and it appears that the accident would have happened regardless of the excessive speed. We think these cases are controlling here."

At the risk of too much repetition we call attention to *Jones v. Baltimore Transit Co.*, 211 Md. 423, 127 A. 2d

649 (1956), in which the Court of Appeals said, at page 429:

> "If we assume, without deciding, that the testimony as to the speed of the bus was evidence of negligence, we think that the appellant is not helped. * * * The cause of the accident clearly was the unexpected and unforeseeable action of the automobile that violated the rules of the road by invading the lane of the bus. In the face of this invasion the bus would have been required to make a sudden stop at any normal speed, * * *."

and to *Mason v. Triplett,* 217 Md. 433, 141 A. 2d 708 (1958), and the observation at page 439: "As we have pointed out in many cases, speed alone may not be considered as a contributing cause where the proximate cause is the unforeseeably negligent driving of the other car in violation of the traffic laws.", and lastly to *Spence v. Wiles,* 255 Md. 98, 257 A. 2d 164 (1969), where it is said (p. 105), "To show merely excessive speed is ordinarily not enough to support an inference of negligence unless there is some further showing that this excessive speed is a direct and proximate cause of the injury."

## Trader's Lights

As we have pointed out earlier, no witness testified to seeing the Trader vehicle before the collision.

Trooper Haddaway testified that he did not determine that there was any defect in Trader's lights; that they were not burning when he arrived; that at least one light on each vehicle was damaged due to the accident; and that he believed Trader's battery was broken in the accident. Evidence from other witnesses which may be taken as bearing on the point is gleaned from the transcript as follows:

Mrs. White said that Jones slowed before turning into her lane to let a car that was coming up in back of him pass on the right; that she never did see the car that hit

them; as she got near her home, she was looking ahead and didn't see any cars coming towards them.

While Eddie Jones was on the stand, these questions were asked and answers given:

Q. Did you look for cars coming?
A. Yeah. I didn't see no car in front of me.
Q. Well, apparently a car hit you. Did you ever see the car that hit you?
A. No, I didn't see it. Weren't no lights on it at the time.

* * *

Q. Did the car that hit you have lights on it?
A. I didn't see no light. I looked both ways.

* * *

Q. You never saw the other car that hit you, is that correct?
A. No, sir; never seen him before.
Q. You never saw the other vehicle that hit you?
A. Unh-unh.
Q. Did you hear any brakes?
A. Didn't have any brakes. I didn't hear no — only thing I hear, when the car hit.
Q. The only thing you heard was when the car hit?
A. When he hit me.

* * *

Q. Mr. Jones, did you look at this other car after the accident happened?
A. Yeah. You mean when the car hit, after I got out?

* * *

Q. You looked at it?
A. I went out and looked at it.
Q. After your accident, is that right?
A. I seen—first time I ever seen him before.
Q. Were the lights on when you looked at it?
A. I was over to—I mean looked like I seen, you

know, a flash. No lights on it, all the front
was out.

Q. All the front lights were out when you looked
at it?

A. I mean only place I could see anything, the
bottom lights like on any car.

Q. But you saw lights on his car after the acci-
dent happened?

A. Bottom ones. That's when I got out. Others,
I didn't see. That is all I seen. I don't know
about when I cross the road. The lights wasn't
showing up; I couldn't see nothing.

Roxie Waters had been out near the road to tell her
kids to get out of a cherry tree, and had started back to-
ward the house when she heard the collision. She walked
over to the Trader vehicle, and did not see any lights on
it. When she was at the cherry tree, she saw the Jones
truck, and a car passing it from behind. She looked both
ways and didn't see any other cars. She started back in
the house and approximately five minutes later heard the
impact.

Daisey Mae Stiles was in the house when the accident
took place, and came out later.

Fabian White, eight years old at the time, was in the
cherry tree. From this vantage point, he saw the Jones
truck but never saw the Trader car until after the acci-
dent.

Appellant Trader had been driving south on West Road
for a distance of 6½ or 7 miles. He said his headlights
were on, and he couldn't have driven the road without
them. He did not see the Jones vehicle until he was "at
least three or four car lengths on him." It was at an
angle, bearing left making a turn into the driveway with
no lights on it. He said he first saw the truck when he
picked it up in his headlights.

We must determine whether this evidence raises a con-
flict for resolution by the trier of the facts. Referring to a
time just before the collision, Jones said of the Trader

car, "No, I didn't see it. Weren't no lights on it at the time." While he also gave some equivocal testimony on the point, he never contradicted nor retracted that statement. His statement that he saw "bottom lights" after the collision could also raise an inference regarding the headlights. A witness of his apparent educational level could not be expected to express himself in precise and explicit terms. Any doubt as to his meaning, not clarified by questions of counsel, and the direct conflict with Trader's testimony that his headlights were on, was for the jury. The testimony of Jones was not so contradictory as to be without probative force, as in *Olney v. Carmichael,* 202 Md. 226, 232, 96 A. 2d 37 (1953).

Both *Shanahan v. Sullivan,* 231 Md. 580, 191 A. 2d 564 (1963) and *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881 (1957) involved mere negative evidence, and each involved contributory negligence by a plaintiff who did not see.

After their motions for directed verdict at the close of all the evidence were denied, which denial we find was proper, and the trial judge instructed the jury, appellants excepted to the court's refusal to instruct:

> "You are instructed that there is no evidence in this case legally sufficient to allow you to conclude that the headlights of the vehicle being operated by the defendant Trader were not on at the time of the accident and you are instructed to disregard this aspect in considering the question of the negligence of the defendant Trader."

and

> "You are instructed that there is no evidence in this case of excessive speed on the part of the defendant Trader and you are to disregard this aspect in considering the question of the negligence of Trader."

and

"You are further instructed that if you find from the evidence that the headlights of the defendant Jones' vehicle were not on at the time of the accident described in the testimony, then there is no evidence that the defendant Trader was guilty of any negligence which contributed to the happening of the accident."

The first exception quoted above involves the question of Trader's headlights, which we have discussed. Refusal to instruct as requested was not error. The third quoted exception above asked the court to rule that if two unlighted vehicles collide at night, one may be as a matter of law free of negligence, and its refusal was correct. The second quoted exception presented appellants' contention that the jury should not have been permitted to consider Trader's speed as negligence.

Refusal so to instruct the jury was error, and we must reverse. Appellants are entitled to a new trial on the issue of liability. We need not decide appellants' second contention. There was no error respecting damages, and that issue need not be tried again. Maryland Rules 1072 and 1074.

> *Judgment in favor of Lola Marie White against Randolph Orlando Trader and Nelson Lewis Major reversed, and remanded for a new trial on the issue of liability only. Costs of this appeal to be paid by appellee Lola Marie White.*