801 A.2d 1018

**CARPENTER REALTY CORPORATION, et al.**

v.

**Dennis Michael IMBESI, Personal Representative of the Estate of Thomas L. Imbesi.**

**No. 117, September Term, 2001.**

Court of Appeals of Maryland.

June 20, 2002.

550

John H. Zink, III (Venable, Baetjer and Howard, LLP, on brief) Towson, for petitioners.

Marc Seldin Rosen (Shar, Rosen & Warshaw, LLC, on brief) Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

This case has had a long and circuitous history in the Maryland judicial system. At the conclusion of the motions hearing in the Circuit Court for Baltimore County, on the last leg of the case's journey, the trial judge aptly mused, "Why do I think regardless [of] how I decide this, Rowe Boulevard [has] not seen the last of [the] Imbesi case?" In this appeal, we must put to rest the question of whether the respondent, the Estate of Thomas L. Imbesi (hereinafter "the Estate") is entitled to post-judgment interest on a judgment entered against petitioners, Carpenter Realty Corporation (hereinafter "Carpenter Realty") and 7UP Bottling Company of Baltimore, Inc. (hereinafter "7UP/Baltimore"), on a claim brought by the Personal Representative of the Estate against the corporations for the unpaid balance of money owed on a stock transaction between Mr. Imbesi and the petitioners.

## I. Facts

On June 1, 1982, Thomas L. Imbesi entered into a Stock Redemption Agreement with Carpenter Realty and 7UP/Baltimore, as well as several other 7UP entities (7UP Bottling Company of Philadelphia, Inc., 7UP Bottling Company of Bridgeton, Inc., 7UP Bottling Co. of Camden, Inc., 7UP Bottling Company of Salisbury, Inc., and 7UP Wilmington Company). Pursuant to this agreement, the corporations redeemed Imbesi's shares of stock in the corporations for

$500,000.00 plus 5 1/4% interest over a 120 month period and forgiveness of a $137,158.00 debt owed by Imbesi to the corporations. The payments to Imbesi were made according to the Stock Redemption Agreement through April of 1991, at which time, a corporate officer of 7UP/Baltimore requested an extension of the time for payment because of financial difficulties. After a payment in July, 1991, the corporation failed to make any additional payments under the Stock Redemption Agreement.

Thomas. L. Imbesi died on March 10, 1992. On March 7, 1994, Dennis Michael Imbesi, who had been appointed as the Personal Representative of the Estate of Thomas L. Imbesi, filed a lawsuit in the Circuit Court for Baltimore County on behalf of the Estate against Carpenter Realty and 7UP/Baltimore seeking recovery of the outstanding debt owed to the Estate under the Stock Redemption Agreement. On the same day, the Circuit Court issued a Writ of Attachment Before Judgment upon the real property of Carpenter Realty at 6159 Edmondson Avenue, Baltimore County, Maryland 21228. The Circuit Court also ordered Carpenter Realty to set aside $78,263.23 in an escrow account with the Clerk of the Circuit Court as security to satisfy any potential judgment in favor of the Estate.[1]

Thereafter, Carpenter Realty and 7UP/Baltimore filed a Counterclaim against the Estate asserting that they had been assigned a Note under seal from the 7UP Bottling Company of Philadelphia, Inc. The Counterclaim alleged that the Note evidenced the indebtedness of Thomas L. Imbesi to the companies, the assignees of the Note, in the amount of $80,000.00 plus 6% interest.[2] The Note had become due and payable on

---

1. When Carpenter Realty initially set aside the funds on March 10, 1994, the money was deposited into a non-interest bearing escrow account. The money was subsequently transferred to an interest bearing account on March 6, 1997.

2. Maryland Rule 2–331(a), concerning counterclaims filed against opposing parties provides:

October 23, 1989, although the Counterclaim alleged that neither Imbesi nor his Estate had made any payments under the Note.

A bench trial commenced on March 22, 1995. On April 10, 1995, the Circuit Court issued its Opinion and Order entering a judgment for the Estate in the amount of $57,447.67, the amount the parties had stipulated was the appropriate amount should the court enter a judgment in the Estate's favor. The judgment did not include an award of pre-judgment interest.

The Circuit Court also concluded that Carpenter Realty had not met its burden of proof to establish a right to set-off[3] its liability to the Estate through its Counterclaim concerning the Estate's failure to make payments on the Note because the corporations did not file a timely claim for payment against the Estate pursuant to Maryland Code (1974, 1991 Repl.Vol.) Section 8–103 of the Estates and Trusts Article.[4] Carpenter Realty and 7UP/Baltimore appealed the Circuit Court's decision on the Counterclaim to the Court of Special Appeals, asserting that the court erred in finding that they had not met their burden of proof on the counterclaim. In an unreported decision, the Court of Special Appeals held that Carpenter Realty and 7UP/Baltimore established a *prima facie* case for entitlement to set-off their liability to the Estate with the

---

A party may assert as a counterclaim any claim that party has against any opposing party, whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party.

**3.** We have previously explained that "setoff means a diminution or a complete counterbalancing of the adversary's claim based upon circumstances arising out of a transaction other than that on which the adversary's claim is based; and counterclaim means the assertion of a right to have an affirmative judgment against the adversary based upon a setoff or a recoupment." *Imbesi v. Carpenter Realty Corp. et al,* 357 Md. 375, 380, 744 A.2d 549, 552 (2000)(internal quotations omitted).

**4.** The 1991 Replacement Volume of the Estates and Trusts Article was the relevant version of the statute in effect at the time this litigation commenced.

claim against the Estate on the Note by producing the instrument to the trial court. The court declined to determine whether the statute of limitations period set forth in Section 8–103 of the Estates and Trusts Article barred the petitioner's claim for set-off. Thus, the Court of Special Appeals reversed the Circuit Court's judgment in favor of the Estate and remanded the case to the Circuit Court for a rehearing on whether the $80,000 Note could be used to set-off the amount owed to the Estate under the Stock Redemption Agreement. In providing guidance to the Circuit Court on remand, the Court of Special Appeals stated in dicta:

By its terms, the nonclaim statute, ET § 8–103, would prevent appellants from recovering any monies from the Estate, because they failed to assert the Note as a claim against the Estate within the statutory period. However, whether appellants can utilize the Note to recover monies from the Estate at this juncture is a far different issue than whether they can now assert the Note to prevent the Estate from recovering from them under the Agreement. We note, in passing, that allowing a debt to be used as a setoff will not thwart the chief purpose behind the nonclaim statute—the prompt administration and closing of estates-in that a setoff will only be asserted, as here, as a defense or in response to a claim made by an estate, and not in a separate proceeding.

On November 18, 1996 the Circuit Court held a hearing on the merits of Carpenter Realty and 7UP/Baltimore's claim for set-off. On January 14, 1998, the court entered an order, stating:

This matter comes before the Court on remand from the Court of Special Appeals pursuant to Maryland Rule 8–604(d)(1). The Court of Special Appeals has asked this Court to determine whether the indebtedness to the Defendant evidenced by the existence of an Eighty Thousand Dollar ($80,000) Note may be allowed to be used as a defensive set-off to the amount owed to the Estate by the Defendants under a Stock Redemption Agreement, thereby extinguishing the Plaintiff's Complaint for Fifty–Seven

Thousand, Four Hundred and Seventy–Seven Dollars and Sixty Seven Cents ($57,477.67).

Noting the issue to be one of first impression in Maryland, the Court of Special Appeals makes clear that under Maryland's Non-claim Statute (Estates and Trusts § 8–103), the Appellant would be precluded from recovering monies from the Estate because they failed to assert the claim within the statute of limitations. If the Note in question may not be utilized as a "sword," may it be utilized as a "shield" despite the running of limitations? This Court believes that it may indeed.

The Court of Special Appeals made it a point to specifically mention that using the Note as a set-off does not offend the chief purpose behind the Non-claim Statute—the prompt administration and closing of estates. Additionally, the Defendants refer to numerous cases from other jurisdictions that deem it proper and equitable to allow the defensive set-off. This Court is persuaded by the reasoning contained in those cases and the direction provided by the Court of Special Appeals that the set-off should be permitted.

Therefore, the court ordered the entry of judgment in favor of Carpenter Realty and 7UP/Baltimore, with costs to be paid by the Estate.

The Estate appealed the Circuit Court's decision to the Court of Special Appeals, emphasizing that the set-off against Carpenter's $57,447.67 obligation was invalid because the Note was stale when assigned. On April 2, 1999, however, the Court of Special Appeals affirmed the Circuit Court's judgment permitting the set-off. *See Imbesi v. Carpenter Realty Corp.*, 125 Md.App. 676, 682, 726 A.2d 854, 857 (1999) (stating that, "[t]he operative language of the nonclaim statute does not expressly prevent a defendant from using an unpresented claim as a defensive set-off to a claim *asserted affirmatively* by an estate")(emphasis in original).

On January 19, 2000, this Court reversed the judgment of the Court of Special Appeals. *See Imbesi v. Carpenter Realty Corp. et al.*, 357 Md. 375, 391, 744 A.2d 549, 558 (2000)(construing Section 8–103(a) of the Estates and Trusts Article as

barring "a claim that has not been timely presented and that arises out of a transaction separate from that on which the estate claims"). We remanded the case to the Court of Special Appeals with instructions to reverse the decision of the Circuit Court and remand the matter for further proceedings consistent with our opinion.

On March 1, 2000, the Estate petitioned the Circuit Court for entry of judgment in the Estate's favor in the amount of $57,447.67, seeking pre-judgment interest in the amount of $3,588.51, at the rate of 6% from the date of the filing of the original Complaint through the original trial on March 22, 1995, and post-judgment interest at the rate of 10% in the amount of $30,518.09 for the period of March 22, 1995 through March 22, 2000.[5] Carpenter Realty and 7UP/Baltimore responded to the Estate's Petition for Costs and filed a Cross Petition for Release of Funds, wherein they conceded that the Estate was entitled to entry of judgment in the amount of $57,477.67 plus the costs of the second appeal to the Court of

---

5. The Estate's Petition for Costs, Interest, and Release of Funds Held in Escrow to Plaintiff requested fees and awards as follows:

9. Plaintiff [Estate] herein requests that the award of costs be incorporated and added to the Judgment in this case. The Plaintiff also requests that this Court calculate the pre-judgment and post-judgment interest due for incorporation into the final judgment. Finally, the Plaintiff requests that all sums held in this Court's interest bearing escrow account be released to Plaintiff to satisfy part of the judgment due and owing to Plaintiff.

10. Plaintiff calculates the pre-judgment interest due as follows: 6% for 1 year and 15 days = $3588.51, which sum should be added to the principal judgment due for a total of $61,036.18, before calculation of post-judgment interest and costs. *I.W. Berman Prop. v. Porter Bros., Inc.*, 276 Md. 1, 344 A.2d 65, 79 (1975).

11. Plaintiff calculates the post-judgment interest due as follows: 10% per year (simple interest) on $61,036.18 = $6103.62 per year from March 22, 1995 to date. Through March 22, 2000, the post-judgment interest will be $30,518.09. The per diem rate thereafter will be $16.722246. *Brown v. Medical Mut. Liab. Ins. Soc.*, 90 Md.App. 18, 599 A.2d 1201, *cert. denied*, 326 Md. 366, 605 A.2d 101 (1992).

The Estate also sought to recover the costs of the appeal to this Court in the amount of $335.60 and the costs of the second appeal to the Court of Special Appeals in the amount of $1,323.60. The costs of the first appeal to the Court of Special Appeals had been charged to the Estate.

Special Appeals reduced by the costs owed by the Estate for the first appeal for a judgment totaling $57,971.27. The corporations asserted, however, that the Estate was not entitled to any pre-judgment or post-judgment interest and that the balance of the amount of money held in the interest bearing account by the Clerk of the Circuit Court after satisfaction of the $57,971.27 judgment for the Estate should be returned to them.

The Circuit Court held a motions hearing on September 5, 2000, to consider the parties' contentions. On September 13, 2000, the court issued an opinion which stated, in part:

> The interest on the judgment in this case is interesting. The Plaintiff's averments are intellectually stimulating but must fail on the basis of legal logic. This Court notes that the Defendants originally deposited a stipulated amount of $57,477.67 with the Registry of the Clerk's Office. These funds were deposited in a non-interest bearing account. . . .
>
> Several years later, upon the request of counsel as the appeal in this case progressed, the funds were transferred to an interest bearing account paying a meager 2% interest per annum.
>
> This Court does not feel, in light of the litigation track of this controversy, that the Plaintiff should receive pre-judgment interest in excess of the interest accumulated by the Clerk's Office on the original $57,477.67.

Although the issue had been raised and argued by both parties, the opinion made no mention of an award of post-judgment interest. The court noted that as of August 30, 2000, the money held in the escrow account, which had accrued interest, totaled $84,238.92. Thus, the Circuit Court awarded costs to the Estate in the amount of $523.60,[6] damages in the amount of $57,477.67 plus accrued interest of $4,356.16, and ordered that a judgment in keeping therewith be entered. The balance of the escrow account funds plus the

---

6.  This figure represents the difference between the costs in subsequent proceeding offset by the amount of costs awarded to Carpenter Realty in the prior action and appeal to the Court of Special Appeals.

interest accrued on the account through August 30, 2000 was ordered to be paid to the corporations. The remaining balance of interest earned on the account from August 30, 2000 through October 19, 2000 was to be paid 73.4% to the Estate and 26.6% to the corporations.

The Estate appealed to the Court of Special Appeals asserting that the Circuit Court erred in concluding that the Estate was not entitled to pre-judgment or post-judgment interest. In an unreported decision, the Court of Special Appeals concluded that the Circuit Court did not abuse its discretion by not awarding pre-judgment interest to the Estate. The Court of Special Appeals concluded that the Estate was entitled to receive 10% post-judgment interest on the damages award of $57,447.67 commencing on April 4, 1995, which was the date of the judgment entered in favor of the Estate after the first trial.

■ Carpenter Realty filed a Petition for Writ of Certiorari, which we granted, *Carpenter Realty Corp. v. Imbesi,* 367 Md. 722, 790 A.2d 673 (2002), to consider the following question:

After a judgment in favor of a plaintiff is reversed and the action remanded for rehearing, is that plaintiff entitled to post-judgment interest on a subsequent judgment in his favor, dating from the original judgment?

For the reasons set forth below, we answer that question in the negative.

## II. Discussion

As a preliminary matter, we consider the statutory provisions governing post-judgment interest. Maryland Code (1974, 1999 Repl.Vol.) Section 11–107(a) of the Courts and Judicial Proceedings Article provides as follows:

(a) *Legal rate of interest on judgments.*— Except as provided in § 11–106 of this article, the legal rate of interest on a judgment shall be at the rate of 10 percent per annum on the amount of judgment.

Maryland Rule 2–604(b), further provides that "[a] money judgment shall bear interest at the rate prescribed by law

from the date of entry." Pursuant to Maryland Rule 2–601(b), the effective date of entry of a judgment is the date on which the clerk of the court prepares a written record of the judgment. *See Medical Mut. Liab. Ins. Soc'y. of Maryland v. Davis,* 365 Md. 477, 481, 781 A.2d 781, 783 (2001); *Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership,* 100 Md.App. 441, 464, 641 A.2d 977, 988 (1994)(stating that "a judgment is not entered until the ministerial act of entering judgment on a file jacket, a docket, or docket sheet, according to the court's practice, is complete"); *see also* Md. Rule 8–202(f)(For actions appealed to the Court of Special Appeals, entry of the judgment "occurs on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book, according to the practice of that court, and records the actual date of the entry."); Md. Rule 8–302(d)(For actions before the Court of Appeals, entry of the judgment "occurs on the day when the clerk of the lower court first makes a record in writing of the judgment, notice, or order on the file jacket, on a docket within the file, or in a docket book, according to the practice of that court, and records the actual date of the entry.")

We have explained the purpose of post-judgment interest as follows:

> The purpose of post-judgment interest is obviously to compensate the successful suitor for the same loss of the use of the monies represented by the judgment in its favor, and the loss of income thereon, between the time of the entry of the judgment . . .—when there is a judicial determination of the monies owed it—and the satisfaction of the judgment by payment.

*I.W. Berman Prop. v. Porter Bros., Inc.,* 276 Md. 1, 24, 344 A.2d 65, 79 (1975); *see King v. State Roads Comm'n of the State Highway Admin.,* 298 Md. 80, 85, 467 A.2d 1032, 1034 (1983)(explaining that in a condemnation action, the property owner "is entitled to receive post-judgment interest on the award at the legal rate from the date of entry of the judgment

... [until] the date the award is actually paid"). Just when was there a judicial determination of monies owed to the Estate in this circuitous legal scenario?

In the present matter, we must discern what constitutes the date of entry of a judgment where the first judgment in the action was reversed and remanded by the Court of Special Appeals, and subsequent judgments were entered on the record. Petitioners argue that the Court of Special Appeals's reversal of the Circuit Court judgment in its first unreported decision in this case vitiated the original judgment in favor of the Estate. The Estate asserts, however, that the Court of Special Appeals correctly held that it should receive post-judgment interest retroactive to April 4, 1995, which was the date of the first judgment in favor of the Estate. Thus, we must determine when a legal liability attached against Carpenter Realty and 7UP/Baltimore in the form of a judgment which would trigger the accrual of post-judgment interest.

Both this Court and the Court of Special Appeals have the ability to dispose of an appeal by dismissing the action, affirming the judgment, vacating or reversing the judgment, modifying the judgment, remanding the action to a lower court for further consideration, or any combination thereof. *See* Md. Rule 8–604(a). Furthermore, Maryland Rule 8–604(e) states, "[i]n reversing or modifying a judgment in whole or in part, the Court may enter an appropriate judgment directly or may order the lower court to do so." [7] We have held that where our mandate specifically directs the entry of a judgment after remand, post-judgment interest on the award runs

---

7. Maryland Rule 8–606 concerning the force and effect of mandates provides:

(a) To evidence order of the Court. Any disposition of an appeal, including a voluntary dismissal, shall be evidenced by the mandate of the Court, which shall be certified by the Clerk under the seal of the Court and shall constitute the judgment of the Court.

(b) Issuance of mandate. Upon a voluntary dismissal, the Clerk shall issue the mandate immediately. In all other cases, unless a motion for reconsideration has been filed or the Court orders otherwise, the Clerk shall issue the mandate upon the expiration of 30 days after the filing of the Court's opinion or entry of the Court's order.

from the date of the issuance of the mandate. *See Andrulis v. Levin Construction Corp.*, 331 Md. 354, 378, 628 A.2d 197, 209 (1993)(increasing the circuit court's judgment by $27,812 and specifying that post-judgment interest on this additional amount would run only from the date the mandate issued). In the absence of a specific instruction from this Court to the trial court that the court *must* award post-judgment interest dating back to the entry of the original judgment, such an award should rest with the sound discretion of the trial court. Thus, we must trace the path of this case from the entry of the original judgment through the subsequent mandates issued on appeal to ascertain when a judgment was entered against the corporations from which post-judgment interest would accrue.

The Circuit Court's order dated April 10, 1995 entering judgment in favor of the Estate was a final judgment for purposes of appellate review. *See Montgomery County v. Revere Nat'l Corp.*, 341 Md. 366, 378, 671 A.2d 1, 7 (1996)(explaining that "an order entered on the docket pursuant to [Maryland] Rule 2–601, and having the effect of terminating the case in the circuit court, is a final judgment"). In the first appeal, the Court of Special Appeals reversed the judgment of the Circuit Court and remanded the matter. The mandate expressly did not limit the reversal solely to the issue of the corporations' claim for set-off against the Estate.

We have explained that "[w]here a mandate is ambiguous, one must look to the opinion and other surrounding

---

(c) To contain statement of costs. The mandate shall contain a statement of the order of the Court assessing costs and the amount of the costs taxable to each party.

(d) Transmission—Mandate and record. Upon issuance of the mandate, the Clerk shall transmit it to the appropriate lower court. Unless the appellate court orders otherwise, the original papers comprising the record shall be transmitted with the mandate.

(e) Effect of mandate. Upon receipt of the mandate, the clerk of the lower court shall enter it promptly on the docket and the lower court shall proceed in accordance with its terms. Except as otherwise provided in Rule 8–611(b), the assessment of costs in the mandate shall not be recorded and indexed as provided by Rule 2–601(c).

circumstances to determine the intent of the court." *Balducci v. Eberly,* 304 Md. 664, 670, 500 A.2d 1042, 1045 (1985). A reversal is defined as "the annulling or setting aside by an appellate court of a decision of a lower court," *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1514 n. 11 (11th Cir.1987), while the provision governing the remand of civil cases from an appellate court states:

> If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. *The order of remand and the opinion upon which the order is based are conclusive as to the points decided.* Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

Md. Rule 8–604(d)(1) (emphasis added).

■ "It has been held that the effect of a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court." *Balducci,* 304 Md. at 671 n. 8, 500 A.2d at 1046 n. 8. The Court of Special Appeals's opinion and mandate of August 6, 1996 which reversed the original judgment and remanded the case to the Circuit Court did not contain any language restricting the effect of the reversal so as to leave the original judgment in place. Accordingly, when this matter made its earlier appearance before us, Judge Rodowsky described the path of the case as follows:

> This action was *tried twice* in the circuit court. A bench trial in March 1995 resulted in a judgment in favor of the Estate for $57,447.67 on the complaint and a judgment for the Estate as counterclaim defendant. On appeal to the Court of Special Appeals *those judgements were reversed,* in

an unreported opinion, on grounds relating to the burden of proving the authenticity of the 1979 note.

*Imbesi*, 357 Md. at 379, 744 A.2d at 551 (emphasis added). Neither our mandate disposing of that appeal, nor the text of the opinion as a secondary source specified any intention to have post-judgment interest accrue from the date of the original judgment. Therefore, the first judgment entered in favor of the Estate on April 10, 1995 was eliminated by the Court of Special Appeals's reversal.

██ Any party can clarify the scope of a mandate or order by filing a motion to alter, amend, or revise the judgment. *See* Md. Rule 2–534 (motions to alter or amend judgments); [8] Md. Rule 2–535 (motions to revise judgments); [9] Md. Rule 8–431 (general motions to the Court of Appeals or Court of Special Appeals).[10] In the present matter, neither party took such an action.

---

**8.** Rule 2–534 provides:

> In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial.

**9.** Rule 2–535 provides, in relevant part:

> (a) Generally. On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule—534.
>
> (b) Fraud, mistake, irregularity. On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.
>
> \* \* \*
>
> (d) Clerical mistakes. Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court.

**10.** Maryland Rule 8–431 concerning motions made to the Court of Appeals or Court of Special Appeals provides:

In reaching its determination that the Estate should receive post-judgment interest from the entry of the original judgment on April 4, 1995, the Court of Special Appeals misconstrued our decision in *Medical Mut. Liability Ins. Soc. v. Davis, supra.* Indeed, the facts and circumstances in the case at bar are distinguishable from those at issue in *Davis,* where our consideration was limited to determining "when post-judgment interest begins to accrue on a money judgment for tort damages, based on a jury verdict, when the judgment is subsequently reduced, via a remittitur, by the trial court." *Id.* at 478, 781 A.2d at 781. In *Davis,* we held that the plaintiffs were entitled to post-judgment interest from the date of the original judgment in the action. *Id.* at 485, 781 A.2d at 785. We reasoned that although the original judgment lost its finality for purposes of appeal by virtue of the defendant's filing of post-judgment motions, the original judgment had not

---

(a) Generally. An application to the Court for an order shall be by motion. The motion shall state briefly and clearly the facts upon which it is based, and if other parties to the appeal have agreed not to oppose the motion, it shall so state. The motion shall be accompanied by a proposed order.

(b) Response. Except as provided in Rule 8–605(a), any party may file a response to the motion. Unless a different time is fixed by order of the Court, the response shall be filed within five days after service of the motion.

(c) Affidavit. A motion or a response to a motion that is based on facts not contained in the record or papers on file in the proceeding shall be supported by affidavit and accompanied by any papers on which it is based.

(d) **Statement of grounds and authorities.** A motion and any response shall state with particularity the grounds and the authorities in support of each ground.

(e) **Filing; copies.** The original of a motion and any response shall be filed with the Clerk. It shall be accompanied by (1) seven copies when filed in the Court of Appeals and (2) four copies when filed in the Court of Special Appeals, except as otherwise provided in these rules.

(f) **Emergency order.** In an emergency, the Court may rule on a party's motion before expiration of the time for a response. The party requesting emergency relief shall file the certification required by Rule 1–351.

(g) **Hearing.** Except as otherwise provided in these rules, a motion may be acted on without a hearing or may be set for hearing at the time and place and on the notice the Court prescribes.

disappeared. *Id.* Furthermore, the defendant in *Davis* had the benefit of the use of the money owed to the plaintiff during the pendency of the remittitur proceedings and presumably earned interest on that sum during the ten-month period which elapsed between entry of the original judgment and entry of the judgment after the plaintiff's acceptance of the remittitur, whereas the corporations in the instant case did not. *Id.* It is important to note, however, that we explicitly limited the scope of the *Davis* decision:

> We do not, however, intend to suggest that post-judgment interest always begins to accrue whenever a money judgment is entered and is final at the time of entry. Rule 2–604(b) must be applied to various situations in accordance with the purpose of post-judgment interest and the considerable case-law governing the running of post-judgment interest.

*Id.* at 484, 781 A.2d at 785.

Furthermore, the post trial proceedings at issue in *Davis* are readily distinguishable from the appellate procedure and rehearings involved in the instant case. A remittitur simply reduces the amount of an award owed pursuant to a jury verdict which is determined by the court to be excessive although the judgment remains in force. While a counterclaim for set-off may also reduce the amount of damages owed from one party to another, the viability of a set-off claim involves a separate and distinct determination of liability *before* adjusting the amount of the judgment. *See Imbesi,* 357 Md. at 382, 744 A.2d at 553 (explaining that resolution of the counterclaim for set-off requires "consideration of the facts and circumstances of a separate transaction and consideration of any defenses that an estate might have against a finding of indebtedness by the estate arising out of that separate transaction"). Therefore, our holding in *Davis* simply cannot be interposed to resolve this matter in favor of the Estate.

The Estate also relies on the Court of Special Appeals's decision in *Brown v. Medical Mut. Liab. Ins. Soc'y,* 90 Md. App. 18, 599 A.2d 1201, *cert. denied,* 326 Md. 366, 605 A.2d 101

(1992), in support of its proposition that the post-judgment interest must be calculated from the date of the original judgment. In *Brown,* the Court of Special Appeals held that where the plaintiffs had been successful at trial, and where the trial court's grant of j.n.o.v. in favor of the defendant had been reversed on appeal, the plaintiffs were entitled to receive post-judgment interest dating from the entry of the original judgment on the verdict to the date that the defendant satisfied the underlying judgment. *Id.* at 21, 599 A.2d at 1202. The court explained that "[a] reversal on appeal of a j.n.o.v. is, in effect, a finding that plaintiff's original judgment always existed." *Id.* at 25, 599 A.2d at 1204.

In reaching this conclusion, the Court of Special Appeals emphasized in its earlier mandate which reversed the grant of j.n.o.v. and remanded the case to the circuit court, that it specifically stated that the judgment was entered for the Browns "on the verdict of the jury." *Id.* at 26, 599 A.2d at 1205. In the present matter, the mandate issuing from our opinion dated January 19, 2000 contained no express provision granting post-judgment interest from the date of the original judgment. Thus, the reasoning applied by the Court of Special Appeals in its decision in *Brown* is inapplicable to the case at bar.

Petitioners assert that our decision in *Cook v. Toney,* 245 Md. 42, 224 A.2d 857 (1966) is dispositive of the issue before us. The procedural history of *Cook* is similar, albeit not identical, to the lengthy procedural history of the case *sub judice.* The case involved a lawsuit brought by Cook against Toney and his co-defendants, the Perrys, for personal injuries caused in an automobile accident. *Id.* at 44, 224 A.2d at 858. At the original trial held in March of 1960, the trial court directed a verdict in favor of Mrs. Perry. *Id.* at 45, 224 A.2d at 858. The jury rendered a verdict against Mr. Perry and Toney in the amount of $5,000; however, the trial court granted Toney a new trial. *Id.* At the second trial, the court entered a directed verdict in favor of Toney. *Id.* Cook appealed the trial court's decision to this Court, and we reversed and remanded the case for a new trial. *See Tates v. Toney,* 231

Md. 9, 14, 188 A.2d 283, 286 (1963). At the conclusion of the third trial, the jury rendered a verdict in favor of Toney, but the trial court granted a new trial in favor of Cook. *See Cook,* 245 Md. at 45–46, 224 A.2d at 859. At the fourth and final trial, the jury rendered a verdict in favor of Cook and on September 23, 1965, the trial court entered judgment against Toney. *Id.* at 46, 224 A.2d at 859. A few days later, Toney paid the $5,000 damage award into the registry of the trial court pending a decision as to whether Cook was entitled to an award of post-judgment interest dating back to the entry of the original judgment on April 2, 1960. *Id.* at 46, 224 A.2d at 859.

The predecessor post-judgment interest rule effective at the time of our decision in *Cook* provided in relevant part, "[a] judgment on verdict shall be so entered as to carry interest from the date on which the verdict was rendered." Md. Rule 642 (1965). We reasoned that because Toney had been granted a new trial, the original jury verdict rendered on March 29, 1960 and the judgment therefrom had been eliminated "as if they had never been entered." 245 Md. at 50, 224 A.2d at 861. Therefore, we concluded that because "the first and only verdict in legal contemplation against Toney" had not been rendered until September 20, 1965, Toney's payment obligation did not attach until that date. *Id.* at 51, 224 A.2d at 862.

Similarly, the first judgment entered in favor of the Estate in the present case was eliminated by the Court of Special Appeals's first mandate ordering the reversal of the judgment. Petitioners cannot be expected to pay interest retroactive to the date of the first judgment just because the amount of the award entered in the final judgment which triggered the corporations' liability for payment is the same amount which had been entered in favor of the Estate in the first judgment.

We conclude, therefore, that for purposes of calculating post-judgment interest, Carpenter Realty and 7UP/Baltimore were not under any obligation to the Estate until the Circuit Court entered its judgment on October 19, 2000.

■ We further agree with the corporations' assertion that post-judgment interest need not be awarded at all in this matter because the judgment in favor of the Estate was immediately satisfied through payment from the escrow account upon entry of the judgment on October 19, 2000. Thus, the corporations' prompt payment of the judgment alleviated the need for an award of post-judgment interest.[11] Therefore, we conclude that the Circuit Court for Baltimore County properly denied the Estate's request for post-judgment interest.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY. COSTS IN THIS COURT AND IN*

---

11. The Estate poses the equitable argument that it should receive post-judgment interest on the $ 57,477.67 award dating back to April 4, 1995, because it was deprived of the use and benefit of that money during the pendency of the various and assorted appeals. What the Estate overlooks, however, is that in this case *both parties* were deprived of the use of the $78,263.23 which Carpenter Realty and 7UP/Baltimore had been ordered to set aside with the Clerk of the Circuit Court for Baltimore County to satisfy any potential judgment. In *Bailey v. Chattem, Inc.*, 838 F.2d 149 (6th Cir.), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2831, 100 L.Ed.2d 931 (1988), the Court of Appeals for the Sixth Circuit applied equitable principles to determine whether post-judgment interest ran from the date of the first judgment in a trial or on a subsequent judgment following a retrial limited to the issue of damages. *Id.* at 154. The court examined several factors, including "the nature of the initial judgment, the action of the appellate court, the subsequent events upon remand, and the relationship between the first judgment and the modified judgment." *Id.* Thus, under equitable principles, and in the absence of a specific instruction to the contrary as explicated in the mandate issuing from the appellate court, the trial court may exercise its discretion to award post-judgment interest from the date of the original judgment. *See Boyd v. Bulala*, 751 F.Supp. 576, 579–80 (W.D.Va.1990). In the present matter, the transcript of the hearing before the Circuit Court held on September 5, 2000 and the trial court's subsequent order denying pre-judgment and post-judgment interest reflects that the trial court balanced the respective interests of the parties, weighed the nuances of the protracted litigation and appeals process, and arrived at an equitable conclusion.

*THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*